# EXHIBIT A

# Trial Court Order

W09-00409-Y (A)

125/157

## ORDER

Having considered the foregoing Motion, the Court hereby (GRANTS) (DENIES) the

State's Motion for Disclosure of Roderick Harris's trial files. *A appellate counsel to disclose only the parts of A file relevant to Ineffective assistance of counsel.*

SIGNED this 10th day of ~~March~~ April, 2015.

Elizabeth Frizell
Presiding Judge
Criminal District Court No. 7

13

# EXHIBIT B

# State's Motion for Disclosure of Trial Files

CAUSE No. W09-00409-Y(A)

EX PARTE                          §       IN CRIMINAL DISTRICT
                                  §
                                  §       COURT NO. 7 OF
                                  §
RODERICK HARRIS,                  §
Applicant                         §       DALLAS COUNTY, TEXAS

**STATE'S MOTION FOR DISCLOSURE OF
RODERICK HARRIS'S TRIAL FILES**

TO THE HONORABLE JUDGE OF SAID COURT:

Respondent in this matter, the State of Texas, through the Criminal District Attorney

of Dallas County, respectfully asks this Court to order the disclosure of Applicant Roderick

Harris's trial files in order for the State to defend against Harris's claims of ineffective

assistance of counsel in his writ of habeas corpus.

I.

Harris has filed a post-conviction application for writ of habeas corpus challenging his

conviction and death sentence.   Harris is represented by the Office of Capital Writs

("OCW").  This Court has set an evidentiary hearing in this case for May 18, 2015.

II.

Harris was represented at trial by Brad Lollar, Doug Parks, Mike Howard, and Calvin

Johnson.  With Harris's authorization, trial counsel tendered Harris's original trial files to

OCW.  *See generally In re McCann*, 422 S.W.3d 701, 704-705 (Tex. Crim. App. 2013)

(explaining that the contents of the trial file belongs to the defendant in the underlying case).

Brad Lollar, lead trial counsel, has indicated to the State that he did not retain a copy of the

trial files nor has he received a copy from OCW since providing the original files.

III.

In his Article 11.071 application for habeas relief, Harris accuses his trial counsel of performing ineffectively during the pretrial investigation, the guilt/innocence phase, and the punishment phase of his proceedings. Specifically, Harris alleges trial counsel was ineffective for:

- failing to sufficiently investigate and present punishment phase evidence that he suffers from fetal alcohol spectrum disorder and was exposed to toxic levels of lead as a child (Application at 16-41);

- failing to present sufficient expert testimony in the punishment phase to explain the mitigating impact of Harris's life history (Application at 41-70);

- failing to offer punishment phase evidence in the form of his own gang expert testimony to rebut the State's evidence of Harris's involvement in a West Dallas street gang (Application at 70-75);

- failing to object to evidence in the punishment phase that he wore a restraint device while being transported in a courthouse elevator during jury selection (Application at 75-83);

- failing to object during the guilt/innocence phase to the admission of autopsy photos and the medical examiner's testimony regarding the second decedent at the scene, Carlos Gallardo[1] (Application at 84-95);

- failing to raise guilt/innocence phase objections to the admission of (a) crime scene photographs and police officer testimony regarding attempts to save Alfredo Gallardo's life at the scene, (b) references in other police officers' testimony that Harris shot at the officers when he exited the Gallardo's trailer, (c) evidence regarding a gun, ammunition, and gloves

---

[1] Harris killed Carlos Gallardo seconds after killing his brother, Alfredo, the complainant in this case. (RR58: 82, 104, 107, 110, 116, 118).

2

seized from Harris's vehicle, which authorities found parked in the driveway next door, and (d) a jail book-in sheet which identified Harris's vehicle (Application at 96-104).

The ineffective assistance of counsel allegations comprise five out of six of Harris's claims for relief in his writ application.

By accusing his counsel of ineffectiveness, Harris has waived any privileges attendant to the files. Given the extensive nature of Harris's ineffectiveness allegations, which cover defense counsel's pretrial mitigation investigation through the punishment phase, most, if not all, of the contents of his trial files should be discoverable.

IV.

Harris has impliedly waived the attorney-client privilege and the work-product doctrine with respect to communications and work product relating to his claims of ineffective assistance of counsel. Harris may not use the attorney-client privilege and work-product doctrines as both a sword and a shield. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir. 1991). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue and thus by

3

implication waives the attorney-client privilege with respect to those communications.[2]

*Strickland v. Washington*, 466 U.S. 668, 691 (1984) (noting that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions"); *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) (holding that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim); *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (noting that "[t]he implied waiver in habeas proceedings [is] the result of a petitioner's assertion of his own counsel's ineffectiveness"); *Bittaker*, 331 F.3d at 716 (noting that "[i]t has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer"); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) (holding that by bringing an ineffective-assistance claim, § 2255 movant waives attorney-client privilege with respect to conversations that "bear on strategic choices made during representation"); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) (noting that "[attorney-client] privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney

---

[2] The attorney-client privilege protects confidential communications between a client and his attorney, or their representatives, made for the purpose of obtaining legal services. TEX. R. EVID. 503(a) & (b). The privilege does not extend to communications "relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer." TEX. R. EVID. 503(d)(3).

4

that raises the specter of ineffectiveness or incompetence"); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) (noting that "where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue"); *Joseph v. State*, 3 S.W.3d 627, 637 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (noting that "the Fifth Circuit has long held that a claim of ineffective assistance of counsel by a defendant against a former attorney waives the attorney-client privilege.").

Harris has also impliedly waived the work-product privilege. While the work-product doctrine protects a client's interests by preventing opposing counsel unrestricted access to an attorney's correspondence, briefs, mental impressions, and other documents, *United States v. Nobles*, 422 U.S. 225, 237 (1975), a client may waive the work-product doctrine by questioning his counsel's performance. *Mason v. Mitchell*, 293 F. Supp. 2d 819, 825 (N.D. Ohio 2003); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, et al. v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002); *Pope v. State*, 207 S.W.3d 352, 366 (Tex. Crim. App. 2006) (acknowledging the waivability of the work-product doctrine). In *Mason*, the district court held that the petitioner impliedly waived the attorney-client privilege and work-product doctrine by putting his attorney's performance at issue but was careful to note that "the waiver in habeas cases should be limited to the extent necessary to litigate a petitioner's ineffective assistance of counsel claims." *Id.* (citing *Bittaker*, 331 F.3d at 722). The Ninth Circuit, citing Supreme Court precedent, has also noted that an implied waiver applies equally to the work-product privilege. *Bittaker*, 331

5

F.3d at 722 n.6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) and noting that implied waiver also applies to the attorney's work-product privilege).

In the context of an ineffective assistance claim, the Florida Supreme Court has extended the waiver principle to the entire trial file and held that an applicant must disclose the entire trial file at the time he makes his claim:

> A defendant may not invoke the attorney-client privilege to preclude trial counsel from testifying about their conversations when those discussions relate to the defendant's claims of ineffective assistance. *See Turner v. State*, 530 So. 2d 45, 46 (Fla. 1987); *see also* § 90.502(4)(c), Fla. Stat. (1999) ("There is no attorney-client privilege . . . when a communication is relevant to an issue of breach of duty by the lawyer to the client . . . arising from the lawyer-client relationship"). *Under such circumstances, the attorney-client privilege is also waived as to trial counsel's files*. *See Reed v. State*, 640 So. 2d 1094, 1097 (Fla. 1994); *accord LeCroy v. State*, 641 So. 2d 853 (Fla. 1994). Further, the waiver of the attorney-client privilege occurs "when [the defendant] file[s] a motion for postconviction relief claiming ineffective assistance of counsel." *Reed*, 640 So. 2d at 1097 (emphasis added).
>
> Thus, we agree with the trial court's ruling that Arbelaez waived his attorney-client privilege as to trial counsel's files when he filed his motion claiming that counsel rendered ineffective assistance by failing to adequately investigate and prepare for trial. *As explained in Reed, the State "will ordinarily be entitled to examine the trial attorney's entire file."* 640 So. 2d at 1097. However, Arbelaez "may move to exclude from discovery any portion of the file which contains matters unrelated to the crimes for which [he] was convicted." *Id*. If such a motion is filed, then "the court shall conduct an in-camera inspection of that portion of the file in question to determine whether it should be disclosed." *Id*.

*Arbelaez v. State*, 775 So.2d 909, 917 (Fla. 2000) (emphasis added).

## V.

Any objection Harris has to release of his trial files based on attorney-client or work product privileges also implicates the civil doctrine of offensive-use waiver. The Texas

6

Supreme Court recognized in *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex. 1985) that a party may waive privilege by offensive use. "A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Id.* at 108 (quoting *Pavlinko v. Yale-New Haven Hosp.*, 470 A.2d 246, 251 (Conn. 1984)); *see also National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex. 1993). Although *Ginsberg* concerned the psychotherapist-patient privilege, the Texas Supreme Court has applied the offensive-use waiver principle to the attorney-client privilege, *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993), and also indicated it would apply offensive-use waiver to the work-product privilege. *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 752 (Tex. 1991); *see also Lewis v. Wittig*, 877 S.W.2d 52, 57 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (holding that a party may waive an attorney work-product privilege, whether derived from a discovery request for an attorney's "entire file" or from the nature of a particular document, by offensive use of that privilege).

In *Davis*, the Texas Supreme Court stated that privileges "represent society's desire to protect certain relationships, and an offensive-use waiver of a privilege should not lightly be found." *Davis*, 856 S.W.2d at 163. Accordingly, it held that such waiver requires each of the following elements: (1) the party asserting the privilege must seek affirmative relief; (2) the privileged information must be such that, if believed by the fact finder, would probably be outcome determinative; and (3) disclosure of the confidential information must be the only means by which the aggrieved party may obtain the evidence. *Id.* To be outcome

7

determinative, a "confidential communication must go to the very heart of the affirmative relief sought." *Davis*, 856 S.W.2d at 163. Mere relevance is insufficient, and a contradiction in position without more is insufficient. *Id.*

In this case, Harris is asserting claims of ineffective assistance for the purpose of gaining relief from his conviction; his claims therefore meet the first prong of the *Davis* test. *See Ginsberg*, 686 S.W.2d at 106 (granting mandamus relief when a plaintiff sought to use a privilege to protect against the disclosure of information that was "materially relevant to, and possibly validated, the statute of limitations defenses asserted by" the defendant). His claims also meet *Davis*'s second prong because both the attorney-client communications and trial file are outcome-determinative of the claims. They will illuminate whether counsel adequately represented Harris and go to the heart of counsel's case preparation.

Finally, disclosure of relevant attorney-client communications and the trial file is the only means by which the State can rebut Harris's claims, and his claims therefore satisfy *Davis's* third prong. Although Harris may argue that the State can effectively rebut his claims via affidavits or examination of defense counsel at a hearing, counsel cannot possibly remember three years post-trial the details of the investigation of the mitigation case and what went into creating the complete trial file. The organization of the file, as well as the decision about what to include in it, necessarily reveals the attorney's thought processes concerning the defense of the case. *Valdez*, 863 S.W.2d at 460. Without access to the trial file, the State cannot rebut or corroborate defense counsel's memories. *See In re Southwest Airlines Co.*, 155 S.W.3d 622, 625 (Tex. App.—San Antonio 2004, no pet.) (condemning

8

plaintiffs' stance that Southwest was required to accept their position regarding whether the information was previously discovered or could have been previously discovered; without knowing the content of the information, Southwest would have no means to rebut the position taken by the plaintiffs in response to the questions they suggest Southwest should be required to pose). Because Harris's claims necessarily hinge on attorney-client communications and the contents of defense counsel's trial files, the State is entitled to the revelation of both. *See Midkiff v. Shaver*, 788 S.W.2d 399, 402-03 (Tex. App.—Amarillo 1990, orig. proceeding) (holding that plaintiffs seeking damages for mental anguish who rely on symptoms of mental anguish for which they received treatment may not: (1) "invoke [] privileges as a shield to prevent discovery of medical and mental health records related to [] asserted emotional condition[s];" or (2) "refuse to answer questions pertaining to medical attention sought in connection with those claims").

## VI.

In all other Dallas County death penalty writs in which OCW has been appointed to represent an applicant (three cases), OCW has acknowledged the implied waiver of privileges in relation to ineffective assistance of counsel claims and agreed to release the files.[3] Despite

---

[3] In *Ex parte Medina*, No. F07-32923-S(A), OCW turned over the entire trial file. In *Ex parte Garry Green*, No. W09-59380-S(A), OCW turned over portions of the file and provided a privilege log of excepted items. In *Ex parte Juan Lizcano*, No. W05-59563-S(A), OCW agreed to release the file but the trial court substituted other counsel before the release actually occurred.

its position on release of trial files in the past, OCW has in this instance declined to release the trial files and advised the State that it must litigate access to Harris's trial files.

## VII.

Harris's ineffective assistance claims are based on review of the record evidence <u>and trial counsel's physical files</u> rather than post-trial interviews with trial counsel. By relying substantially on the content of the trial files in developing and asserting his ineffective assistance claims, Harris has placed the substance of the files at issue. *See* TEXAS RULE OF PROFESSIONAL CONDUCT 3.04 ("Fairness in Adjudicatory Proceedings"), Comment 2 ("Documents and other evidence are often essential to establish a claim or defense. The right of a party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. . . . "). The State is entitled to both relevant attorney-client communications and documentary evidence. To combat the ineffective assistance claims, which here encompass the pre-trial investigation, guilt/innocence phase, and mitigation case, the State is entitled to access to counsel's actual trial files and not just their fading memories. Harris's across-the-board challenges to trial counsel's investigation, treatment of certain guilt/innocence evidence, and failure to present sufficient or particular mitigation evidence in this case place trial counsel's entire performance at issue. The State acknowledges that most case law limits the waiver of privilege to information specific to Harris's claims; his claims here, however, permeate his entire trial. *But see Arbelaez*, 775 So.2d at 917 (explaining that, upon a post-conviction claim of ineffective assistance, the State will ordinarily be entitled to examine the trial attorney's *entire* file).

10

Notably, Harris seeks to exclude from disclosure the very materials likely to contradict his allegations against his former counsel and, consequently, prevent the full and fair litigation of his complaints.

## VIII.

For the above reasons, the State respectfully asks this Court to grant its motion and order OCW to disclose to the State all materials in Harris's trial files relevant to his claims of ineffective assistance of trial counsel. The State further asks this Court to order OCW to (a) provide the State with an electronic copy of the portions of the trial file which are responsive to this motion along with a privilege log describing and categorizing any non-responsive items and (b) file with the Court a sealed, electronic copy of the entire trial file (to which the State may not have access).

Respectfully submitted,

Shelly O'Brien Yeatts
Assistant District Attorney
State Bar No. 24033487
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3625
(214) 653-3643 fax

11

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion has been served on Robert Romig, Attorney for Applicant Roderick Harris, Office of Capital Writs, 1700 N. Congress Ave., Ste. 460, Austin, Texas 78711, at Robert.Romig@ocw.texas.gov on March 17, 2015.

Shelly O'Brien Yeatts

## ORDER

Having considered the foregoing Motion, the Court hereby (GRANTS) (DENIES) the

State's Motion for Disclosure of Roderick Harris's trial files.

SIGNED this _____ day of March, 2015.

_____
Elizabeth Frizell
Presiding Judge
Criminal District Court No. 7

13

# EXHIBIT C

# Harris's Response to State's Motion for Disclosure of Trial Files

## IN CRIMINAL DISTRICT COURT NO. 7
## DALLAS COUNTY, TEXAS

**EX PARTE**
**Roderick Harris,**
      **APPLICANT**

)
)
)
)
)
)
)

**Cause No.**
**F09-00409-Y(A)**

FILED
2015 MAR 23 AM 4: 08
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

## RESPONSE TO THE STATE'S MOTION FOR DISCLOSURE OF
## RODERICK HARRIS'S TRIAL FILES

BRAD D. LEVENSON (No. 24073411)
Director, Office of Capital Writs
(E-Mail: Brad.Levenson@ocw.texas.gov)
ROBERT ROMIG (No. 24060517)
(E-mail: Robert.Romig@ocw.texas.gov)
JEREMY SCHEPERS (No. 24084578)
(E-Mail: Jeremy.Schepers@ocw.texas.gov)
Post-Conviction Attorneys
Office of Capital Writs
1700 N. Congress Ave., Suite 460
Austin, Texas 78701
(512) 463-8600
(512) 463-8590 (fax)

Attorneys for Applicant

# IN CRIMINAL DISTRICT COURT NO. 7
## DALLAS COUNTY, TEXAS

|  |  |  |
|---|---|---|
| EX PARTE<br>**Roderick Harris,**<br>      **APPLICANT** | ) ) ) ) ) ) ) | **Cause No.**<br>**F09-00409-Y(A)** |

## RESPONSE TO THE STATE'S MOTION FOR DISCLOSURE OF RODERICK HARRIS'S TRIAL FILES

Roderick Harris ("Harris"), through his attorneys the Office of Capital Writs ("OCW"), requests that this Court deny the State's Motion for Disclosure of Roderick Harris's Trial Files. Harris does not dispute that by raising claims of ineffective assistance he has effectuated a limited waiver for prior counsel to use otherwise privileged information; however, he disputes that this waiver can be used as a discovery mechanism by the State and that it requires current post-conviction counsel to provide the State access to trial counsel's files.

## I.

## PROCEDURAL HISTORY

Harris was convicted and sentenced to death by this Court on May 21, 2012. Pursuant to the Texas Code of Criminal Procedure, Article 11.071, Section 2(b), this Court appointed the OCW on May 22, 2012, to represent Harris in his state post-conviction habeas litigation. On June 11, 2014, the OCW filed Harris's Initial Application for Writ of Habeas Corpus ("Initial Application"). The State filed its Answer to Harris's Initial Application on December 10, 2014. On February 6, 2015,

1

this Court set Harris's Initial Application for an evidentiary hearing, to occur the week of May 18, 2015.

On March 17, 2015, the State filed a Motion for Disclosure of Roderick Harris's Trial Files. In that motion, State argues that it "is entitled to access to counsel's actual trial files" because by raising claims of ineffective assistance of counsel, Harris has waived privileges normally applicable to those files. (State's Motion at 10.) Harris disputes that he should be required to provide the State with copies of trial counsel's files.

## II.

## ARGUMENT

Harris recognizes that, by having raised specific issues of ineffective assistance of counsel as developed in his Initial Application, he has created a limited waiver of privileged information. However, he disputes the State's position regarding the scope of that waiver. Raising claims of ineffective assistance of trial counsel operate as a limited waiver of the privilege, allowing trial counsel to defend themselves from such claims using privileged information. It does not automatically create a discovery mechanism for the State to access trial counsel's files through current post-conviction counsel. The State is unable to provide any binding authority for the proposition that the waiver extends to it, and instead seeks to extend a limited waiver applicable to trial counsel into a broad discovery tool.

### A. Raising Ineffective Assistance of Counsel Claims Operate as a Limited Waiver of the Attorney-Client Privilege

Under the Texas Rules of Evidence, confidential communications between a client and his attorney are privileged. TEX. R. EVID. 503(b)(1)(A) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . between the client . . . and the client's

2

lawyer."). The privileged nature of communications between client and attorney remains intact, even upon the termination of the attorney-client relationship. *See Maryland Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982).

The privilege between attorney and client is not absolute. It is "well-established . . . that when an attorney's professional conduct is challenged by the client, the privilege is waived so far as necessary to defend the attorney's character." *West v. Solito*, 563 S.W.2d 240, 245 n.3 (Tex. 1978). In the context of criminal law, courts across the nation have consistently "held that a claim of ineffective assistance of counsel by a defendant against a former attorney waives the attorney-client privilege." *Joseph v. State*, 3 S.W.3d 627, 637 (Tex. App.—Houston [14th Dist.] 1999) (citing *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967)); *see also United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009).

However, any waiver of the attorney-client privilege only applies to communications relevant to the claim of ineffective assistance of counsel. *Laughner*, 373 F.2d at 327 (noting where "the client alleges a breach of duty to him by the attorney, . . . he thereby waives the privilege as to all communications *relevant* to that issue" (emphasis added)). Courts have consistently limited the scope of these waivers, permitting disclosure of only those confidential communications that are "*necessary* to prove or disprove [the client's] claims." *Pinson*, 584 F.3d at 978 (emphasis added).[1]

---

[1] *See also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question."); *Johnson v. Alabama*, 256 F.3d 1156, 1179 (11th Cir. 2001) ("[A] habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel *relevant* to assessing the reasonableness of those decisions in the circumstances." (emphasis

3

Predecessor counsel's duty to limit disclosure to information relevant to the claim of ineffective assistance also flows from counsel's continuing duty to the former client. Both the *ABA Guidelines* and the *Texas Guidelines* stipulate that, "[i]n accordance with professional norms, all persons who are or have been members of the defense team have a continuing duty to safeguard the interests of the client." *ABA Guidelines*, Guideline 10.13; *Texas Guidelines*, Guideline 11.8. ABA Formal Opinion 10-456 states that, in the context of an ineffective assistance of counsel claim, lawyers may disclose information "reasonably necessary" for resolution of the ineffectiveness claim. *ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Opinion 10-456*, at 5 (2010). However, the opinion further states that it is

---

added)); *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.*, 120 F.R.D. 687, 692 (C.D. Cal. 1988) (rejecting "the suggestion made by some parties that 'selective' disclosure should not be allowed, that if the exception is permitted to be invoked, *all* attorney-client communications should be disclosed" as "directly contrary to the reasonable necessity standard"); *Levin v. Ripple Twist Mills, Inc.*, 416 F. Supp. 876, 886-87 (E.D. Pa. 1976) ("In almost any case when an attorney and a former client are adversaries in the courtroom, there will be a credibility contest between them. This does not entitle the attorney to rummage through every file he has on that particular client (regardless of its relatedness to the subject matter of the present case) and to publicize any confidential communication he comes across which may tend to impeach his former client. At the very least, the word 'necessary' in the disciplinary rule requires that the probative value of the disclosed material be great enough to outweigh the potential damage the disclosure will cause to the client and the legal profession."); *Alabama v. Lewis*, 36 So. 3d 72, 77-78 (Ala. Crim. App. 2008) (noting that, by alleging "ineffective assistance of counsel during the trial and direct appeal of these cases, the defendant waived the benefits of both the attorney-client privilege and the work product privilege, but *only* with respect to matters *relevant* to his allegations of ineffective assistance of counsel" (second emphasis added)); *In re Dean*, 711 A.2d 257, 258-59 (N.H. 1998) ("We hold that claims of ineffective assistance of counsel, whether brought in a motion for new trial or in a habeas corpus proceeding, constitute a waiver of the attorney-client privilege to the extent *relevant* to the ineffectiveness claim; the waiver is a limited one." (emphasis added)).

4

"highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable." *Id.*

The State is not trial counsel's representative for the purpose of Harris's current litigation. How trial counsel chooses to defend themselves from these claims, and to what extent the limited waiver of privileged information will be effectuated, is a decision for trial counsel, not the State, to make.

## B. The State has Failed to Cite Any Binding Authority for the Proposition That It is "Entitled"[2] to Access Harris's Trial Files

The key dispute between Harris and the State is the extent and scope of this limited waiver of protected information. Harris maintains that this allows trial counsel to use the otherwise privileged information to defend against ineffective assistance of counsel claims, while the State suggests that this waiver allows it access to trial counsel's files through current post-conviction counsel. However, nowhere in the State's Motion is there a case, statute, or evidentiary rule referenced that allows the State the access to trial counsel's files that it currently seeks. This inability to provide binding authority is telling—the State seeks to take a narrow and limited waiver allowing trial counsel the ability to defend themselves against an ineffective assistance of counsel claim into a broad discovery tool for the State.

In its Motion, the State cites a long string of cases that stand for the proposition that raising an ineffective assistance of counsel claim operates as a waiver of the attorney-client privilege, to the extent that trial counsel seeks to use that information to defend themselves. (State's Motion at 3-6.) Harris does not dispute this fact. However, none of these cases stand for the proposition that the State is entitled to access Harris's trial counsel files via post-conviction counsel. The only case in the State's Motion that specifically contemplates the State being permitted to access trial

---

[2] (State's Motion at 10.)

5

counsel's files is *Arbelaez v. State*, 775 So.2d 909, 917 (Fla. 2000).  However, this case is a poor analogy to the current scenario, as Florida treats writs of habeas corpus as civil matters, whereas in Texas writs of habeas corpus are considered criminal in nature.  *Compare Coffee v. Wainwright*, 172 So.2d 851, 852 (Fla. Dist. Ct. App. 1965) (noting that "this type of proceeding is civil and not criminal in nature."), *with Aranda v. District Clerk*, 207 S.W.3d 785, 786 (Tex. Crim. App. 2006) (noting that "the proceeding is criminal, not civil, in nature.") (citing *Ex parte Davis*, 542 S.W.2d 192, 198 (Tex. Crim. App. 1976).  Civil actions traditionally have much broader discovery rights than criminal proceedings, limiting any persuasive force that Florida's provisions may have regarding the State's request.

## III.

## CONCLUSION

For the foregoing reasons, Harris requests this Court deny the State's Motion for Disclosure of Roderick Harris's Trial Files.

Respectfully submitted,

DATED:    March 18, 2015    By _____

Jeremy Schepers

6

# CERTIFICATE OF SERVICE

I, the undersigned, declare and certify that I have served the foregoing Motion to:

District Clerk, Writ Desk
Frank Crowley Courts Building
133 N. Riverfront Boulevard
Lock Box 12
Dallas, TX 75207
(Original and one copy)

Judge Elizabeth Frizell
Criminal District Court No. 7
Frank Crowley Courts Building
133 N. Riverfront Boulevard
Lock Box 54
Dallas, TX 75207
(One courtesy copy)

Dallas County District Attorney
ATTN: Shelly O'Brien Yeatts
Frank Crowley Courts Building
133 N. Riverfront Boulevard
Lock Box 19
Dallas, TX 75207
(One copy)

Roderick Harris
TDCJ # 999571
TDCJ Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
(One copy)

This certification is executed on March 18, 2015, at Austin, Texas.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Jeremy Schepers

7